---

### In re LOWY.

(Supreme Court, Appellate Division, First Department. November 18, 1910.)

ATTORNEY AND CLIENT (§ 53*)—DISBARMENT—EVIDENCE.

In a proceeding against an attorney for unlawfully executing a general release of a claim of a client for personal injuries against a street railway, and concealing the settlement and failing to pay over any of the proceeds to the client, evidence *held* to require disbarment.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. § 75: Dec. Dig. § 53.*]

Application by the Bar Association of the City of New York to discipline or disbar John J. Lowy, an attorney. Application granted.

See, also, 122 N. Y. Supp. 1134.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, MILLER, and DOWLING, JJ.

Einar Chrystie, for petitioner.
A. Joseph Geist, for respondent.

INGRAHAM, P. J. The Bar Association of the City of New York presented charges of professional misconduct against the respondent. Upon the respondent's interposing an answer, the matter was referred to the official referee, and upon his report the matter now comes before the court.

The respondent is a young man, 24 years of age, having been admitted to the bar about two years. In August, 1909, he, with an associate, saw an accident that happened to one Margaret McNally as she was alighting from a street car. The respondent's associate assisted the woman home, and recommended the respondent to her as a lawyer to obtain damages for her injury from those operating the railroad. Having communicated this fact to the respondent, the respondent on the following morning called on Mrs. McNally, and had an interview with her and her brother, who was then with her. This interview resulted in her retaining the respondent to recover from the railroad company damages for the injuries that she had sustained. This retainer was evidenced by an instrument, dated August 22, 1909, where-

by the respondent was retained as an attorney and counselor at law to institute and prosecute her claim for damages sustained on or about the 22d day of August, 1909, and authorized the respondent to take such steps as he might deem fit in the prosecution of this action; and she agreed to pay the respondent one-half of any sum recovered by verdict or compromise in the action. This instrument is typewritten, and was evidently taken by the respondent to this woman's house with the expectation of being retained. It was signed "Margaret Mc-Nally"; but, as she could not write, the evidence is that her brother actually signed the paper in her name. Mrs. McNally testified that she did not see nor hear from the respondent again until some time in October. The respondent, however, at once put himself in communication with the receivers of the railroad company and made a claim on behalf of Mrs. McNally for damages. On the 7th of September, about two weeks after the accident, he presented to the receivers a general release, releasing the receivers from all claims or demands of Mrs. McNally, upon a printed blank furnished by the receivers, and which recited the consideration as $25. The blanks in this instrument were all in the handwriting of the respondent, apparently written at the same time, with the same pen and ink. It was executed by Mrs. McNally by her mark, and was acknowledged before the respondent as a notary public on the 3d of September, 1909. The mark, purporting to have been made by Mrs. McNally, attesting her signature, is characteristic, and entirely different from the mark that she made upon other instruments which it is conceded that she executed. The words "twenty-five dollars," as the consideration for which this instrument was delivered, had no indication of having been written in at any other time than when the instrument was originally prepared. When this instrument was presented to the receivers, the respondent signed a receipt for this money, signing it, "Margaret McNally, per J. J. Lowy, Attorney," and at the same time received a check to the order of Margaret McNally, or J. J. Lowy, for $25, which he indorsed, and for which he received the money.

No communication of this settlement or payment of any part of the money received was made to Mrs. McNally until after the respondent was notified to appear before the grievance committee of the Bar Association. Mrs. McNally was employed as a laundress by a Mr. Ferris, who had a son who resided with him and who was an attorney and counselor at law. At Mrs. McNally's request young Mr. Ferris had a conversation with the respondent over the telephone about the middle of October, 1909. Mr. Ferris told the respondent that Mrs. McNally was employed in his father's house, and that he understood that the respondent was bringing an action for her against the railroad company or its receivers; that Mrs. McNally had heard nothing about the case; that the respondent said that the case was then on the calendar in the Municipal Court; that he had taken a statement of the witnesses to the action, which showed a very poor cause of action; that he should try the case as soon as he finished his duties in connection with the coming election, and then asked that Mrs. McNally would call at his residence in East Eighth street. Nothing was said about Mrs. McNally having signed a release, or authorized respondent to

settle the claim. In pursuance of that request, Mrs. McNally called on the respondent at his house and had a conversation with him. The parties differ as to what was said at that conversation, but the respondent admits that he made no statement to Mrs. McNally about this settlement. On the 27th of November, 1909, the respondent wrote a letter to Mrs. McNally, stating that her case had been adjourned to December 14, 1909, pending settlement, and that he would write to her before then when to appear at his office in reference thereto.

Mrs. McNally hearing nothing further from the respondent, and having ascertained that the case had been settled without her consent, the matter was laid before the grievance committee of the Bar Association, before whom the respondent appeared. He stated to the committee that when he received this $25 he turned it over to his father, who used it for the support of his family; that his financial circumstances were then not of the best, and the $12.50 "looked good to him"; that he believed that, if Mrs. McNally did not accept this $25, she would not get a cent out of the company; that he told Mrs. McNally that he had brought suit against the company "to cover up his tracks"; that when he had the interview with his client in October he did not tell her that he had settled the case, as he understood from what she said that she would not accept $25; that he told Mr. Ferris over the telephone all about the case, in fear that Mr. Ferris would make trouble with his client, and he was trying to shield himself. Mrs. McNally testified that she had no interview with the respondent on the 3d of September, when this alleged release was dated and purported to have been executed. Her testimony was corroborated by that of two of her daughters, who testified that she was confined to her house as a result of this accident for over two weeks after the accident. The respondent, before the referee, admitted making this settlement and receiving the money. He testified that on the 3d of September, 1909, Mrs. McNally came to his house, and he then had a conversation with her about her claim against the receivers of the railroad company, and that she authorized him to settle on the best terms that he could; that she said that she did not want to have to come down to his house again; that he had one of these releases in his possession that had been left with him by some representative of the receivers in relation to another claim that he had against them; that he then filled out this release, leaving the amount blank, and that she then executed the release and left it with him, to be used in case a settlement could be made; that after he had settled the case he, without any communication with her, inserted the amount of $25 in the release and received the money from the railroad company; that shortly after he gave $12.50, one-half the sum that he received, to his friend, who had been his companion on the night of the accident, to take to Mrs. McNally; that he had an interview over the telephone with Mr. Ferris, and subsequently had an interview with his client, and wrote the letter of November 27th. This companion of the respondent also testified that he received the $12.50; that he went to Mrs. McNally's residence, but did not find her at home, and then forgot all about it, went back to a school that he was attending in Penn-

sylvania, and did not return to New York until after Christmas, having the $12.50 in his pocketbook all the time, and had forgotten all about it.

The referee found that, while the preponderance of evidence is against the respondent upon the question as to whether he forged this release, he does not think it is sufficient to prove the charge beyond a reasonable doubt, but finds the defendant guilty of unprofessional conduct as an attorney and counselor at law, and that the charges have generally been sustained.

A consideration of all the testimony has satisfied us that the claim of the respondent that he had an interview with Mrs. McNally on the 3d of September, or that she ever executed this release, is not sustained by the evidence. An inspection of the instrument itself and the nature of the mark that was made upon it, in comparison with the mark that Mrs. McNally made upon other instruments, and the improbable nature of the story that he told as to his possession of the blank release, entirely uncorroborated, has satisfied us that Mrs. McNally had nothing to do with its execution. It is undisputed that he had no authority to settle Mrs. McNally's claim against the receivers for $25, and no authority from her to insert such a sum in this release as a consideration of her settling her claim against the receivers. He admits that he was satisfied that she would not be willing to accept such an amount as a settlement of her claim. The whole story as told by the respondent is extremely improbable; but, if it be accepted as true, it shows a gross fraud upon his client and entirely unjustifiable conduct.

We have seriously considered whether, in view of the youth and inexperience of the respondent, we would be justified in inflicting any penalty short of disbarment; but the whole attitude of the respondent towards his client, and his evident lack of appreciation of the duties that he assumed when he became an attorney and counselor at law, has satisfied us that his own interest, as well as the interest of the profession and the public, require that he should adopt some other means of livelihood, and we are therefore forced to the conclusion that he should be disbarred.

The application is therefore granted, and the respondent disbarred as an attorney and counselor at law. All concur.